**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:25-CV-00190-HBB**

**JARRAD H.**[1] **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

## I. BACKGROUND

Before the Court is the Complaint (DN 1) of Jarrad H. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 15) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 8). By Order entered March 10, 2026 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefore was filed and granted. No such request was filed.

## II. FINDINGS OF FACT

On August 1, 2023, Plaintiff protectively filed an application Supplemental Security Income ("SSI") (Tr. 18, 415-27). As this is an SSI application, the issue is whether Plaintiff

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

became disabled on August 1, 2023, due to bipolar disorder, post-traumatic stress disorder ("PTSD"), attention-deficit/hyperactivity disorder ("ADHD"), depression, and anxiety (Tr. 20, 28). The application was denied initially on December 13, 2023, and upon reconsideration on March 26, 2024 (Tr. 18, 272, 290). On April 25, 2024, Plaintiff filed a written request for hearing (Tr. 18, 329).

On September 20, 2024, Administrative Law Judge Stacey Foster ("ALJ") conducted a video hearing (Tr. 18, 37). Plaintiff and his counsel, Mary Burchett-Bower, participated (*Id.*). William Irvin, an impartial vocational expert, testified during the hearing (*Id.*).

In a decision dated November 25, 2024, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 18-28). At the first step, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2023, the alleged onset date (Tr. 20). At the second step, the ALJ determined that Plaintiff has the following severe impairments: mood disorder, anxiety disorder, ADHD, PTSD, and borderline personality disorder (*Id.*). The ALJ also found that Plaintiff's report of symptoms—syncope, seizures, or dizziness—alone is not sufficient to establish he has a medically determinable cardiac or neurological impairment (Tr. 20-21). Yet the ALJ did indicate the RFC would include a limitation to no work around hazards such as unprotected heights and no climbing ladders, ropes, or scaffolds in the event these reported symptoms of dizziness, or convulsions recur (*Id.*). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 21).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can never climb ladders, ropes, or scaffolds and must avoid all exposure to hazards in the workplace; he can understand, remember, and carry out simple instructions and procedures that can be learned within thirty days; he can concentrate, persist at tasks, and maintain pace for simple tasks requiring little or no independent judgment and minimal variation; he can occasionally interact with coworkers and supervisors, but can never interact with the public; he can adapt to the pressures and changes of a routine work environment (Tr. 23). Additionally, the ALJ determined that Plaintiff has no past relevant work (Tr. 27).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 27-28). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 1, 2023, through the date of the decision (*Id.*).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 402-04). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## III. <u>CONCLUSIONS OF LAW</u>

### A. <u>Standard of Review</u>

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of*

*Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481; *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

**B. <u>The Commissioner's Sequential Evaluation Process</u>**

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

> 1) Is the claimant engaged in substantial gainful activity?
>
> 2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the RFC to return to his or her past relevant work?
>
> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 416.920(a)(4)(i)-(v). Here, the ALJ denied Plaintiff's claim at the fifth step.

### C. <u>Challenge to Mental RFC Finding</u>

#### 1. *Arguments of the Parties*

Plaintiff argues that substantial evidence does not support the ALJ's mental RFC determination because he erred in evaluating the persuasiveness of the prior administrative medical findings, the opinions of the consultative examiners, and the opinion of his treating psychiatrist (DN 13 PageID # 1399-1406). Plaintiff alleges several errors by the ALJ in evaluating the evidence of record and the opinion evidence that caused the mental RFC determination to not be supported by substantial evidence (*Id.*). In response, Defendant argues the ALJ evaluated the evidence of record and the opinion evidence consistent with the requirements of the regulations (DN 15 PageID # 1413-22). Defendant contends that substantial evidence supports the ALJ's evaluation of Plaintiff's mental RFC (*Id.* at PageID # 1422-24).

### 2. *Applicable Law*

The residual functional capacity ("RFC") finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC finding ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 416.1520c, 416.1529(a). Here, Plaintiff primarily challenges the ALJ's evaluation of the persuasiveness of the prior administrative medical findings and medical source statements in the record.

The regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[2] in the record, even if it comes from a treating medical source. 20 C.F.R. § 416.920c(a).[3] Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5).[4] Of these five factors, the two most important are supportability and

---

2 At the initial and reconsideration levels, state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 416.913a(a)(1). ALJs "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 416.913a(b)(1).

3 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).

4 In assessing the relationship with the client, consideration should be given to the following: length of the treatment

consistency. 20 C.F.R. § 416.920c(a) and (b)(2). Further, the regulation requires ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Notably, under the regulations ALJs "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

The regulations provide the following descriptions:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

### 3. *Discussion*

#### a. Prior Administrative Medical Findings

The ALJ reviewed three prior administrative medical findings (Tr. 26) (citing Exs. 2A, 4A, 6A). Mary K. Thompson, Ph.D., prepared the first on December 5, 2021 (Tr. 273-79). Her prior administrative medical findings address an earlier SSI application that Plaintiff filed on June 16, 2021 (*Id.*). Concerning the paragraph "B" criteria for listings 12.04 and 12.08, Dr. Thompson opined that Plaintiff had a moderate limitation in his ability to understand, remember, or apply

relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3)(i)-(v).

information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself (Tr. 275).[5] She found the evidence does not establish the presence of "C" criteria (*Id.*). In the mental RFC explanation, Dr. Thompson indicated that Plaintiff is able to:

> A. Understand and remember simple instructions and procedures requiring brief initial learning periods, usually 30 days or less,
> B. Sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment & involving minimal variations & doing so at requisite schedules of work & breaks, including 2-hour time blocks,
> C. Interact frequently as needed with supervisors and peers & sufficiently for task completion, yet requiring no more than occasional interaction with the public, (very little to 1/3 of the time)
> D. Adapt adequately to situational conditions and changes with reasonable support & structure.

(Tr. 278).[6]

Michelle D. Bornstein, Psy.D., prepared the second one on December 8, 2023 (Tr. 281-87). Her prior administrative medical findings address Plaintiff's SSI application filed on August 1, 2023 (*Id.*). Concerning the paragraph "B" criteria for listings 12.06 and 12.08, Dr. Bornstein opined that Plaintiff had a mild limitation in his ability to understand, remember, or apply

5 At step two, the determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the four areas of mental functioning are rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1). At step three, the severity requirements for Listings 12.04, 12.06, and 12.15 are set forth in paragraphs "B" and "C" of the listing. 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00A2. The severity requirements for Listing 12.08 are set forth in paragraph "B" of the listing. *Id.*

6 Notably, in the context of assessing Plaintiff's mental RFC, Dr. Thompson found the consultative examiner opinion, rendered by Ollie Dennis, Ed.D., on October 26, 2021, "is supported by objective findings and is found to be highly persuasive" (Tr. 276). Dr. Thompson also found that Plaintiff's "statements regarding mental restrictions are partially consistent with objective findings, which indicate less persistence and severity than alleged" (Tr. 276). Dr. Thompson opined that Plaintiff is moderately limited in his ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting (Tr. 277-78).

information (Tr. 284). She opined that Plaintiff had a moderate limitation in his ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself (*Id.*). She found the evidence does not establish the presence of "C" criteria (*Id.*). In the mental RFC explanation, Dr. Bornstein indicated that Plaintiff is able to:

> A. Understand and remember simple instructions and procedures requiring short initial learning periods of usually 30 days or less.
> B. Sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations, and doing so for extended periods of two-hour segments, while maintaining regular attendance and being punctual within customary tolerances.
> C. Interact occasionally as needed with supervisors and peers (at least once up to 1/3 of the time) and sufficiently for task completion and interact occasionally (at least once up to 1/3 of the time) with the public, and without need for special supervision, as well as with adequate capacity for responding appropriately to criticism from supervisors and working with or near others without undue distraction.
> D. Adapt adequately to situational conditions and changes in a routine work setting, while also having adequate awareness of normal hazards and capacity to respond with appropriate precautions.

(Tr. 287).[7]

Tony Sinkhorn, Psy.D., prepared the third prior administrative medical findings on March 25, 2024 (Tr. 291-98). His prior administrative medical findings address Plaintiff's SSI application filed on August 1, 2023 (*Id.*). Concerning the paragraph "B" criteria for listings 12.04, 12.06, 12.08, 12.11, and 12.15, Dr. Sinkhorn found that Plaintiff had a moderate limitation in all four broad functional areas (Tr. 294). She determined that the "[e]vidence does not establish the

---

7 Notably, in the context of assessing Plaintiff's mental RFC, Dr. Bornstein found the consultative examiner opinion, rendered by Ollie Dennis, Ed.D., on October 26, 2021, "is supported consistent and more persuasive" (Tr. 285). She also found the consultative examiner opinion rendered by Kathy Seigler, Psy.D., on November 10, 2023, "is supported consistent and more persuasive" (Tr. 286). By contrast, Dr. Bornstein found that Plaintiff's statements regarding symptom related limitations "are partially consistent" (Tr. 285). Concerning Plaintiff's mental RFC, Dr. Bornstein opined that Plaintiff is moderately limited in his ability to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting (Tr. 286-87).

presence of "C" criteria" (*Id.*). Dr. Sinkhorn's mental RFC explanation is identical to that of Dr. Bornstein (*compare* Tr. 287 *with* Tr. 297-98).[8] Notably, Dr. Sinkhorn indicated, "At reconsideration, the entire medical record has been reviewed. The evidence received on Recon is consistent with the initial findings. The initial assessment is more persuasive and the initial assessment is affirmed" (Tr. 298).

The ALJ assessed the persuasiveness of the three prior administrative medical findings (Tr. 26). The pertinent part of the ALJ's decision reads as follows:

> State agency medical reviewers opined that the claimant could perform a limited range of simple work with limited interactions with others (Exhibits 2A, 4A, and 6A). The state agency medical consultants did not examine the claimant or have the opportunity to review the new medical information developed at the hearing level. This new information supports additional limitations in simple work. For these reasons, the state agency medical reviewers' opinions are not fully persuasive.

(*Id.*). There are some subtle differences between Dr. Thompson's mental RFC limitations and those expressed by Drs. Bornstein and Sinkhorn. Nevertheless, the ALJ's first sentence in the block quotation accurately and adequately summarizes the mental RFC limitations opined by all three. In the second and third sentences of the above paragraph, the ALJ recognizes that these three mental RFC opinions are not consistent with subsequently received medical evidence that supports the imposition of additional limitations in simple work. *See* 20 C.F.R. § 416.920c(c)(2). Specifically, the ALJ is referring to the medical evidence in Exhibits 7F, 8F, 10F-20F, 22F-23F,

---

8 Notably, in the context of assessing Plaintiff's mental RFC, Dr. Sinkhorn found the consultative opinions of Drs. Dennis and Seigler are "supported consistent and more persuasive" (Tr. 295-96). By contrast, she found Plaintiff's statements regarding symptom related limitations "are partially consistent" (Tr. 295). Concerning Plaintiff's mental RFC, Dr. Sinkhorn opined that Plaintiff is moderately limited in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting (Tr. 296-97).

25F, 26F, and 28F, which he discusses in preceding paragraphs of his decision (*see* Tr. 20-22, 24-25). Based on this subsequently received evidence, the ALJ found that Plaintiff should be limited to no interaction with the public (Tr. 23), in contrast to Drs. Bornstein and Sinkhorn opining that Plaintiff could occasionally interact with the public (Tr. 287, 298).

Notably, Plaintiff asserts that the ALJ failed to discuss Dr. Thompson's opinion that he can "adapt adequately to situational conditions and changes with reasonable support & structure" (DN 13 PageID # 1403) (citing Tr. 278). But Dr. Thompson articulated this limitation nearly two years prior to Plaintiff filing the SSI application in this case. By contrast, Drs. Bornstein and Sinkhorn, who had the benefit of reviewing medical evidence pertaining to the time period at issue in this case, opined that Plaintiff can "adapt adequately to situational conditions and changes in a routine work setting" (*see* Tr. 287, 298). Further, the ALJ had the benefit of considering the medical evidence in Exhibits 7F, 8F, 10F-20F, 22F-23F, 25F, 26F, and 28F, which Drs. Bornstein and Sinkhorn did not have the opportunity to consider. Clearly, substantial evidence in the record supports the ALJ's decision to include the limitation that Plaintiff "can adapt to the pressures and changes of a routine work environment" in the RFC determination (Tr. 23). In sum, the ALJ's persuasiveness findings concerning the three state agency physicians are supported by substantial evidence in the record and comply with the applicable law. *See* 20 C.F.R. § 416.920c(c)(2).

**b. Consultative Examiner Opinions**

On July 30, 2019, Ollie C. Dennis, Ed.D., conducted a consultative psychological examination of Plaintiff in connection with his first application for SSI compensation as an adult (Tr. 601). As a result of Plaintiff's uncooperative behavior and poor effort during the examination, Dr. Dennis expressed a diagnostic impression of malingering (Tr. 605). He

recommended that other records be obtained to corroborate any mental deficiency or mental health issues (Tr. 605-06). Due to Plaintiff's uncooperative behavior and poor effort, Dr. Dennis could not determine Plaintiff's overall capacity to adapt to pressures of normal daily work activity (*Id.*). Dr. Dennis issued this report more than four years before Plaintiff filed his SSI application in this case.

On October 26, 2021, Dr. Dennis conducted a second consultative psychological examination of Plaintiff in connection with his second SSI application filed on June 16, 2021 (Tr. 751). Dr. Dennis' diagnostic impression was cannabis use disorder, moderate; amphetamine-type substance use disorder in reported five months remission; borderline personality disorder; bipolar I disorder, current or most recent episode depressed, moderate; and rule out borderline intellectual functioning through school records (Tr. 755). Dr. Dennis opined as follows:

> His effort was rather limited, but he probably can understand and remember one and two stage instructions with mild to moderate difficulty. His capacity to sustain attention to complete tasks is mildly limited. Social interaction was generally moderately impaired. His overall capacity to adapt to pressures of normal daily work activity is probably mildly to moderately limited at this time.
>
> . . .
>
> Mr. Hale exhibited features of a character disorder, history of cannabis dependence and methamphetamine abuse, instability in moods identified as a bipolar disorder, and possible cognitive deficits. He manifested estimates of borderline to low average cognitive ability, but his effort was rather limited.

(Tr. 756). Dr. Dennis issued this report nearly two years before Plaintiff filed his SSI application in this case.

On November 10, 2023, Kathy Seigler, Psy.D., conducted a consultative psychological examination of Plaintiff in connection with his August 1, 2023, application for SSI (Tr. 1013). Dr. Seigler's diagnostic impression was other specified anxiety disorder with features of agoraphobia and social anxiety; other specified personality disorder with borderline features;

history of PTSD; suspected borderline intellectual functioning; and stimulant use disorder, in sustained remission (Tr. 1016). Dr. Seigler opined that Plaintiff had no limitation on his ability to understand, remember and carry out simple, repetitive tasks; a moderate limitation on his ability to sustain attention, concentration and persistence; a moderate to marked limitation on his ability to interact appropriately to the public, coworkers and supervisors in work setting; and a moderate to marked limitation in his ability to tolerate work stress, adapt and be flexible (Tr. 1017).

The ALJ assessed the persuasiveness of the opinions expressed by Drs. Dennis and Seigler (Tr. 26). In pertinent part, the ALJ's decision reads:

> I also considered the opinions of the consultative examiners. Dr. Dennis performed two consultative examinations. As discussed above, the first examination does not contain an assessment of functional limitations due to malingering (Exhibit 2F). At the second consultative examination, Dr. Dennis opined that the claimant has moderate limitations in basic mental functioning and as a result could perform simple one and two step instructions and work with limited social interactions (Exhibit 5F). Dr. Dennis's report is generally consistent with the longitudinal record and is well supported by a detailed rationale. For these reasons, Dr. Dennis's opinion is persuasive and is incorporated in the claimant's residual functional capacity. K. Seigler, PsyD, also performed a consultative examination (Exhibit 10F). Dr. Seigler opined that the claimant has moderate to marked limitations working with others, handling workplace stress, and adapting to workplace. Dr. Seigler did not have the opportunity to review the full record and based her opinions on the claimant's subjective statements. Dr. Seigler's opinions are not fully persuasive to the extension that they marked functional limitations, including no interactions with the public.

(Tr. 26). Although Dr. Dennis articulated his second opinion nearly two years before Plaintiff filed the SSI application in this case, the ALJ found the opinion is "generally consistent with the longitudinal record" (*Id.*). Specifically, the ALJ is referring to the subsequently received medical evidence set forth in Exhibits 1F, 3F, 6F, 7F, 8F, 10F-20F, 22F-23F, 25F, 26F, 28F and discussed in preceding paragraphs of the decision (*see* Tr. 20-22, 24-25). *See* 20 C.F.R. § 416.920c(c)(2). Additionally, the ALJ found that Dr. Dennis's second opinion is well supported by a detailed

rationale. *See* 20 C.F.R. § 416.920c(c)(1). By contrast, the ALJ found that Dr. Seigler's marked restrictions are not fully persuasive due in part to their inconsistency with the above-mentioned medical evidence and her reliance on Plaintiff's subjective statements. *See* 20 C.F.R. § 416.920c(c)(2). In sum, the ALJ's persuasiveness findings concerning the opinions rendered by Drs. Dennis and Seigler are supported by substantial evidence in the record and comply with the applicable law. *See Id.*

**c. Dr. Umar's Office Notes**

In the discussion that follows the RFC determination, the ALJ did not summarize the office notes from Dr. Syed Umar, a treating psychiatrist, which are set forth in Exhibit 21F and dated May 21, 2024, June 4, 2024, and July 2, 2024 (*see* Tr. 23-26, 1171-80).[9] The Sixth Circuit has indicated "[a]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Moreover, the ALJ's failure to summarize the treatment notes does not indicate they were not considered. In fact, the ALJ referenced them in the context of assessing the persuasiveness of a Mental Medical Source Statement form that Dr. Umar filed out on July 30, 2024 (*see* Tr. 26, 1204-09).[10]

Notwithstanding, the Court will provide a summary of the three treatment notes to provide the reader with context in assessing Plaintiff's challenges to the ALJ's persuasiveness assessment of Dr. Umar's opinions. On May 21, 2024, Plaintiff's treating psychiatrist, Dr. Umar performed a new patient examination (Tr. 1178-80). Dr. Umar indicated Plaintiff's total score of 23 on the Patient Health Questionnaire-9 ("PHQ-9") interpreted as severe depression (Tr. 1178).[11] Dr.

9 A duplicate of the July 2, 2024, office note is also located at Exhibit 27F (Tr. 1343-46).
10 The ALJ observed, "Dr. Umar's own treatment notes reflect that the claimant did not admit to his years long history of substance abuse so his indication that substance abuse is not a factor in the claimant's limitations is unpersuasive.
11 According to the American Psychological Association, the PHQ-9 offers psychologists a concise self-administered

Umar observed that Plaintiff's total score of 6 on the PHQ-2 indicated he experienced depressed mood and anhedonia nearly every day over the past two weeks (*Id.*).[12] Dr. Umar provided a comprehensive summary of Plaintiff's mental health history, family history, social history, and medication history (Tr. 1178-79). There is no indication that Plaintiff informed Dr. Umar about his polysubstance abuse issues (*Id.*). The mental status examination section reads:

> cooperative gentleman who is fidgety with his the upper and lower limbs[,] wearing glasses[,] lower lip is pierced on 2 sides[,] good eye contact[,] wearing glasses[,] accompanied by the mother[,] articulates well[,] describes his mood being anxious[,] affect is congruent with mood[,] no visual auditory hallucinations[,] reported feels people are watching him in the waiting area[,] no visual auditory hallucinations reported[,] fleeting suicidal thoughts[,] last time was 5 days ago[,] without any plans or intensions no suicidal thoughts reported today[,] no thoughts of hurting others[,] alert and oriented[,] concentration attention overall satisfactory[,] memories intact insight and judgment intact.

(Tr. 1179). Dr. Umar's diagnostic assessment indicates major depressive disorder, recurrent severe without psychotic features; generalized anxiety disorder; PTSD, chronic; other insomnia not due to a substance or known physiological condition; and a current Global Assessment of Functioning ("GAF") of 45 (Tr. 1180). Dr. Umar prescribed Viibryd 20 mg once daily; Prazosin 2 mg at bedtime; and Klonopin 0.5 mg twice daily (*Id.*).

On June 4, 2024, Dr. Umar conducted a two-week follow-up appointment (Tr. 1175-77). He noted that Plaintiff, despite doing better and not experiencing any adverse effects on the new medications, had stopped taking his depression medication for the last four days (Tr. 1175). Again, there is no indication that Plaintiff informed Dr. Umar about his polysubstance abuse issues

tool for assessing depression. https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health

12 "The PHQ-2, comprising the first 2 items of the PHQ-9, inquires about the degree to which an individual has experienced depressed mood and anhedonia over the past two weeks." https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health

(Tr. 1175-76). Dr. Umar's mental status examination merely states, "cooperative gentleman[,] is wearing glasses and lower lips pierced on 2 places[,] fidgety his lower limbs[,] eye contact is fair[,] describes his mood being all right[,] affect is slightly anxious but ok[,] calm no hallucinations delusions or others reported[,] alert and oriented" (Tr. 1176). The diagnostic assessment and prescribed medications did not change (*Id.*).

On July 2, 2024, Dr. Umar conducted a one-month follow-up appointment (Tr. 1171-73). He noted that Plaintiff quit taking his Klonopin because it made him tired and sleepy but without it he feels anxiety which limits his social activities (Tr. 1172). Plaintiff reported taking the Viibryd and prazosin without any adverse effect (*Id.*). Dr. Umar's mental status examination merely indicates:

> patient is rocking back and forth[,] wearing glasses[,] in unshaven face and [he] describes his mood being stressed[,] affect is anxious[,] he articulates well[,] patient is paranoid thinks that people are watching him through the window[,] no visual auditory hallucinations thoughts of hurting self or others reported[,] alert and oriented.

(*Id.*). Dr. Umar directed Plaintiff to stop taking Klonopin and prescribed Buspirone 5mg tablet twice daily and Rexulti 0.5mg tablet once daily (Tr. 1173).

**d. Dr. Umar's Opinion**

On July 30, 2024, Dr. Umar, filed out a Mental Medical Source Statement form (Tr. 1204-09). On the first page, Dr. Umar reported the following diagnoses: major depressive disorder, recurrent severe; generalized anxiety disorder; PTSD; and insomnia (Tr. 1204). He indicated that Plaintiff experienced off and on episodes of depression and anxiety (*Id.*). Dr. Umar identified the prescribed medications and mentioned that Plaintiff is tolerating them well (*Id.*). He lists the clinical findings as follows: cooperative; fidgety; mood all right, affect anxious; no suicidal

ideation; no hyperactivity/inattention; no hallucinations or delusions; alert and oriented (*Id.*). Throughout the rest of this document, Dr. Umar primarily checked boxes (Tr. 1205).[13]

Sometimes Dr. Umar checked boxes that seemed inconsistent with other boxes he checked or comments that he wrote. For example, Dr. Umar checked numerous boxes indicating Plaintiff is *seriously limited* in his mental abilities and aptitudes needed to do unskilled work (Tr. 1206).[14] Yet he also checked boxes indicating Plaintiff has *limited but satisfactory* mental abilities and aptitudes to do unskilled work such as remember work-like procedures; understand and remember short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; make simple work-related decisions; and ask simple questions or request assistance (*Id.*) (emphasis added). Dr. Umar also checked boxes indicating Plaintiff has a *limited but satisfactory* mental ability and aptitude to do particular types of jobs such as interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and travel in unfamiliar place (Tr. 1207). Yet his written explanation for these limitations indicates that Plaintiff is "not able to be dependable" due to his being "easily anxious depressed or having difficulty remembering and paying attention" (*Id.*). Additionally, Dr. Umar checked boxes

---

13 For example, Dr. Umar identified Plaintiff's signs and symptoms by merely checking boxes that indicate anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; generalized persistent anxiety; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience which are a source of marked distress; psychomotor agitation or retardation; emotional withdrawal or isolation; persistent irrational fear of a specific object, activity, or situation which results in compelling desire to avoid the dreaded object, activity or situation; intense and unstable interpersonal relationships and impulsive and damaging behavior; motor tension; and sleep disturbance (Tr. 1205).

14 Specifically, Dr. Umar checked boxes indicating Plaintiff has a *seriously limited* mental ability to maintain attention for two hour segment; sustain an ordinary routine without special supervision; work in condition with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress (Tr. 1206) (emphasis added).

indicating Plaintiff would find *stressful*: working within a schedule; making decisions; exercising independent judgment; completing tasks; working with other people; dealing with the public (strangers); dealing with supervisors; being criticized by supervisors; getting to work regularly; remaining at work for a full day; little latitude for decision-making; underutilization of skills; and lack of meaningfulness of work (Tr. 1208). Further, he checked a box indicating on average Plaintiff would be absent from work more than four days per month (*Id.*). Notably, Dr. Umar checked a box indicating alcohol or substance abuse do not contribute to any of Plaintiff's limitations set forth above (Tr. 1209).

The ALJ's assessment of this Mental Medical Source Statement form reads:

> Syed Umar, MD, provided a statement that the claimant was not dependable and would not be able to meet the basic mental demands of work (Exhibit 24F). Dr. Umar's opinions are not fully consistent with the other medical opinions of record or with the treatment record. The check the box form completed by Dr. Umar does not provide a detailed rationale that cites to objective evidence in support of the opinions. Dr. Umar's own treatment notes reflect that the claimant did not admit to his years long history of substance abuse so his indication that substance abuse is not a factor in the claimant's limitations is unpersuasive. The objective medical evidence does not support Dr. Umar's assessment that the claimant would have marked or extreme level of impairment in a nonpublic work environment. For all these reasons, the opinions of Dr. Umar are not fully persuasive.

(Tr. 26). When the decision is viewed holistically, the above evaluation more than adequately explains how the ALJ considered the consistency and supportability factors in determining the persuasiveness of Dr. Umar's opinions. *See* 20 C.F.R. § 416.920c(b)(2). For example, in the block quotation, the ALJ finds that Dr. Umar's opinions are not fully consistent with other medical opinions and treatment records in the record (Tr. 26). In the preceding paragraphs of the decision, the ALJ identifies and discusses the very Exhibits that substantiate this finding (*see* Tr. 20-22, 24-25) (citing Exhibits 2A, 4A, 6A, 1F, 3F, 6F, 7F, 8F, 10F-20F, 22F-23F, 25F, 26F, 28F). Next,

the ALJ addresses the supportability issue by first pointing out Dr. Umar has not provided a detailed rationale that cities to objective evidence substantiating the checked box opinions on the form (*see* Tr. 26, 1204-09). Further, the ALJ found Dr. Umar's belief—substance abuse is not a factor in Plaintiff's limitations—unsubstantiated because the doctor's own treatment notes indicate Plaintiff did not admit to his years long history of substance abuse (Tr. 26, 1171-80, 1209). Consequently, the ALJ's findings concerning the persuasiveness of Dr. Umar's opinions are supported by substantial evidence in the record and comply with applicable law. *See* 20 C.F.R. § 416.920c.

Plaintiff also claims the ALJ failed to consider his frequent medication adjustments in assessing his mental RFC (DN 13 PageID # 1401-02). Again, the Sixth Circuit has indicated "[a]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker*, 99 F. App'x at 665. The ALJ's failure to discuss the medication changes does not indicate that they were not considered. *Id.* For the above reasons, the ALJ's mental RFC determination is supported by substantial evidence.

## IV. <u>CONCLUSION</u>

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation modified). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. *Id.* After reviewing the record, the Court

concludes that the ALJ's determination is supported by substantial evidence in the record and correctly follows the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## V. ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

October 29, 2026

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel